United States District Court
Southern District of Texas
**ENTERED**
March 29, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff/Respondent,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 2:20-942-3** |
| | § | **CIVIL NO. 2:22-89** |
| **ADAN RIVERA,** | § | |
| **Defendant/Movant.** | § | |

**MEMORANDUM OPINION & ORDER**

Defendant/Movant Adan Rivera filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Memorandum in Support, and Declaration (D.E. 292, 293, 294), to which the United States of America (the "Government") responded (D.E. 355) and Movant replied (D.E. 362). For the reasons set forth below, Movant's § 2255 motion is **DENIED**.

**I. BACKGROUND**

On July 16, 2020, undercover agents with the Department of Homeland Security (DHS) conducted a reverse-sting operation that involved the purchase of 17 kilograms of cocaine by Movant and codefendants Raquel Hernandez, Rudy Reyna, Johnny Joe Aleman, Edward Orta Dominguez, and John Luis Vela. Movant and his coconspirators pooled their money—a total of $252,925 in cash—in order to purchase the cocaine at a bulk rate. Agents contacted Hernandez regarding the drug transaction and told her to go to a restaurant in Corpus Christi. Shortly after Hernandez and Reyna arrived at the restaurant, two other vehicles arrived. The occupants of one vehicle gave Hernandez a box containing $58,000 cash, and the other gave her a duffle bag of cash. Hernandez and Reyna then drove to a

1

nearby hotel. Inside a hotel room, undercover agents showed Hernandez what appeared to be 17 kilograms of cocaine. She said she did not have all the money for the cocaine, but someone else would arrive with the remaining cash. Movant subsequently arrived at the hotel with a white plastic bag of cash, which Reyna collected and gave to Hernandez and an undercover agent. Agents arrested a total of seven coconspirators, including Movant, who was found in another room in the hotel.

Movant was represented by attorney David Klein (hereinafter "Counsel") throughout these proceedings. On January 7, 2021, Movant pled guilty to conspiracy to possess with intent to distribute more than five kilograms of cocaine. He was offered the Government's standard written plea agreement, which he rejected; however, he did sign a Stipulation of Facts (D.E. 97). At his rearraignment hearing, Movant affirmed under oath that he had a copy of the indictment and that he understood the nature of the charge, the elements of the offense, and his right to plead not guilty and proceed to trial. Movant stated that he and Counsel had discussed how his sentence would be calculated under the Sentencing Guidelines and that he understood he faced a mandatory minimum sentence of ten years up to a maximum of life imprisonment. He further testified that he was pleading guilty voluntarily and was not threatened or promised leniency in exchange for his guilty plea. The Court explained its sentencing procedures, and Movant testified that he had discussed with Counsel how the Sentencing Guidelines may apply to him and that he understood he could not withdraw his guilty plea, even if the Court imposed the statutory maximum sentence. The Court accepted Movant's guilty plea after being satisfied that he was competent to enter a plea, there was a factual basis for the plea, he understood the

consequences of entering a plea, and he was voluntarily and knowingly pleading guilty. *See* 1/7/2021 Rearraign. Tr., D.E. 338.

According to the Presentence Investigation Report (PSR, D.E. 131), in February of 2021, while Movant was out on bond, Drug Enforcement Administration (DEA) agents conducting surveillance on his car saw him engage in a hand-to-hand transaction with the driver of another car. Later, the agents conducted a traffic stop of the other car and found 24 grams of heroin. A search of the driver's phone showed the heroin had been purchased from Movant. In March of 2021, the agents executed an arrest warrant on Movant at his home, where a search uncovered synthetic urine, drug ledgers, seven cellular phones, $28,961, and around 2.65 grams of heroin. Movant's bond was revoked, and a criminal complaint was filed in this Court in Case No. 2:21-MJ-286.

The PSR held Movant accountable for 17 kilograms of cocaine and 26.65 grams of heroin, resulting in a base offense level of 32. Despite pleading guilty, Movant did not receive a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3El.l because of his continued criminal conduct while awaiting sentencing. Based on an oral agreement between the parties, the Government agreed not to pursue charges against Movant in Case No. 2:21-MJ-286 if he did not object to the inclusion of the heroin as relevant conduct and the loss of credit for acceptance of responsibility.

With a base offense level of 32 and a criminal history category of IV, Movant's advisory guideline sentencing range was 168–210 months' imprisonment. The Court adopted the PSR without change, granted Counsel's request for a downward variance, and sentenced Movant to 135 months. The Court then informed Movant that: he had the right

to appeal his conviction and sentence; if he wanted to appeal, he needed to file a notice within 14 days; and if he could not afford an attorney on appeal, he could ask the Court to appoint counsel.

Judgment was entered on April 19, 2021. Movant did not appeal. He filed the present motion on April 22, 2022. It is timely.

## II. MOVANT'S ALLEGATIONS

Movant's § 2255 motion alleges that Counsel was constitutionally ineffective in the following ways: (1) Counsel failed to inform Movant that he was entitled to a jury trial/instruction on the amount of cocaine he knew or should have known was involved in the conspiracy, which rendered Movant's guilty plea involuntary; (2) Counsel failed to file a motion to withdraw Movant's guilty plea after Movant instructed him to do so; (3) Counsel failed to challenge the drug amount involved in the conspiracy; and (4) Counsel failed to file a notice of appeal after Movant instructed him to do so.

## III. LEGAL STANDARDS

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and

4

would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In addition, "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

### B. Ineffective Assistance of Counsel

An ineffective assistance of counsel (IAC) allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on an IAC claim, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need

not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

## IV. ANALYSIS

### A. Misinformation Regarding Jury Trial/Instruction on Drug Amount

In Ground One, Movant argues that Counsel misinformed him that he was accountable, as a coconspirator, for the 17 kilograms of cocaine Hernandez attempted to purchase from DHS agents during the reverse-sting operation. He claims that Counsel never informed him that he was entitled to a jury trial on the amount of cocaine involved, and, had he known he was entitled to a jury instruction to determine whether he knew or should have known 17 kilograms of cocaine was involved in the conspiracy, he never would have pled guilty and would have insisted on a jury trial.

Before deciding whether to plead guilty, a defendant is entitled to "the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364–65 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970), and citing *Strickland*, 466 U.S. at 686). *Strickland's* two-part analysis applies to claims of ineffective assistance of counsel in this context. *E.g.*, *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During this stage of a proceeding, the Supreme Court has reiterated that counsel has "the critical obligation . . . to advise the client of 'the advantages and disadvantages of a plea agreement.'" *Padilla*, 559 U.S. at 370 (citing *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). "It is the lawyer's duty to ascertain if the plea is entered voluntarily and knowingly," and the "lawyer must actually and substantially assist his client in deciding whether to plead guilty." *United States. v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008) (quoting and citing *Herring v. Estelle*,

491 F.2d 125, 128 (5th Cir. 1974)). "It is his job to provide the accused an understanding of the law in relation to the facts." *Id.* "The advice he gives need not be perfect, but it must be reasonably competent." *Id.* In this context, the prejudice prong requires the prisoner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill*, 474 U.S. at 59). "The test is objective; it turns on what a reasonable person in the defendant's shoes would do." *Id.* at 209; *accord Padilla*, 559 U.S. at 372 ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

Counsel submitted an affidavit stating that, after they reviewed the discovery together, he "explained to [Movant] his options: go to trial and force the Government to prove all of its claims against him; or plead guilty with or without cooperation. We discussed the likely jury instruction for a drug conspiracy case and that there would be a question for the jury to answer about the amount of drugs involved in the conspiracy and the amount he knew or should have known were involved." Klein Aff., D.E. 350, p. 4. Movant affirmed during rearraignment that he understood the Government would have to prove at trial that the conspiracy involved more than five kilograms of cocaine and that he knew or reasonably should have known that the scope of the conspiracy involved more than five kilograms of cocaine. Rearraign. Tr. at 15:8–16:1. Counsel further stated: "In our discussions of the sentencing guidelines, I informed Mr. Rivera that my estimates of the guideline calculations were just that—estimates—and the Court would ultimately decide

7

his sentence." Klein Aff. at 4. Movant affirmed at rearraignment that he had discussed the Sentencing Guidelines with Counsel. Rearraign. Tr. at 18:11-14.

Movant claims that Counsel misinformed him "that, under federal law, he was accountable as a co-conspirator for the 17 kilograms of cocaine . . . ." D.E. 293, p. 5.  For reasons set forth fully in Part IV.C, *infra*, Counsel's advice that Movant would likely be held accountable for 17 kilograms of cocaine under the Sentencing Guidelines was not erroneous. Moreover, had Movant gone to trial, he would have been entitled to a jury finding as to whether he knew or should have known that the scope of the conspiracy involved more than five kilograms of cocaine, not 17. *See United States v. Haines*, 803 F.3d 713, 741–42 (5th Cir. 2015). Because a drug quantity of 17 kilograms did not increase the mandatory minimum or statutory maximum sentence under 21 U.S.C. § 841(b)(1)(A), Movant would not have been entitled to a jury finding on the exact quantity of drugs he knew or should have known was involved. *See id*.; PATTERN JURY INSTRUCTION 2.97 – CONTROLLED SUBSTANCES – CONSPIRACY, Fifth Circuit District Judges Association Pattern Jury Instructions Committee, *Pattern Jury Instructions, Criminal Cases* (2019) ("Generally, the exact quantity of the controlled substance need not be determined so long as the jury establishes a quantity at, or above a given baseline amount in the appropriate subsection of § 841(b).").

Movant has failed to show that Counsel provided erroneous advice or ineffective assistance during the plea-bargaining phase. Moreover, for reasons explained fully in Part IV.B, *infra*, Movant's plea was knowing and voluntary. This claim is denied.

## B. Failure to File Motion to Withdraw Guilty Plea

In Ground Two, Movant claims that, after he was charged with possession with intent to distribute 24 grams of heroin in Case No. 2:21-MJ-286 and lost credit for acceptance of responsibility in this case, he told Counsel to file a motion to withdraw his guilty plea, but Counsel responded that he could withdraw his guilty plea in a proceeding under 28 U.S.C. § 2255. Movant claims that, had Counsel filed a motion to withdraw the plea, there is a reasonable probability the motion would have been granted because: (1) if Movant were acquitted on the heroin charge, he would have received acceptance of responsibility in this case, and (2) if he were convicted on the heroin charge, the two sentences "were going to run concurrently." D.E. 293, p. 6. Counsel has responded that Movant "**never** instructed me to withdraw his guilty plea. I never told Mr. Rivera to seek to withdraw his plea in a proceeding under 18 U.S.C. § 2255." Klein Aff. at 5.

"A criminal defendant does not have an absolute right to withdraw a guilty plea." *United States v. Harrison*, 777 F.3d 227, 234 (5th Cir. 2015). "Rather, a defendant may withdraw a guilty plea after the court has accepted it, but prior to sentencing, only if he 'can show a fair and just reason for requesting the withdrawal.'" *Id.* (quoting FED. R. CRIM. P. 11(d)(2)(B)). The Fifth Circuit has established seven factors—known as the *Carr* factors—that district courts must consider in determining whether to permit a defendant to withdraw a guilty plea:

> (1) whether or not the defendant has asserted his innocence;
> (2) whether or not the government would suffer prejudice if the withdrawal motion were granted;
> (3) whether or not the defendant has delayed in filing his withdrawal motion;

9

(4) whether or not the withdrawal would substantially inconvenience the court;
(5) whether or not close assistance of counsel was available;
(6) whether or not the original plea was knowing and voluntary; and
(7) whether or not the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Carr*, 740 F.2d 339, 343–44 (5th Cir. 1984).

These factors are nonexhaustive, and no single factor or combination of factors is dispositive of whether a defendant should be allowed to withdraw a guilty plea; rather, the court must ultimately examine the totality of the circumstances. *United States v. Strother*, 977 F.3d 438, 443 (5th Cir. 2020); *United States v. Urias-Marrufo*, 744 F.3d 361, 364 (5th Cir. 2014). A defendant who asserts his innocence must also provide a "substantial supporting record" for this assertion. *Strother*, 977 F.3d at 445.

Even if Movant had instructed Counsel to file a motion to withdraw his guilty plea—which the Court does not find—the motion would have been denied. First, Movant has not asserted his innocence as to the cocaine conspiracy. Second and third, the Government maintains that a two-month delay would have prejudiced its ability to proceed to trial had Movant tried to withdraw his guilty plea. Fourth, withdrawal would have substantially inconvenienced the Court because the case was near the end of the sentencing process, especially since it appears Movant expected the Court to wait until the close of Case No. 2:21-MJ-286 before he decided whether to again plead guilty or go to trial in the current case. Fifth, Movant received close assistance by Counsel before he decided to plead guilty,

as detailed in Counsel's affidavit and affirmed by Movant at rearraignment. *See* Klein Aff. at 4 (After reviewing discovery, Counsel advised Movant about the benefits and risks of going to trial and his potential sentencing exposure, but Movant "kept insisting that he did not want to go to trial because of his criminal history."); Rearraign. Tr. at 11:5–12:4 (Movant affirmed that he discussed the charges with Counsel, had enough time to discuss the case with Counsel, and was satisfied with Counsel's services). Sixth, Movant's sworn testimony at rearraignment confirms that his plea was knowing and voluntary, as he was not threatened or promised leniency in exchange for his guilty plea and he understood the charges against him, the rights he was waiving, and his maximum sentence. Rearraign. Tr. at 12:7–14:22, 15:5–16:1, 16:4-15, 19:17–20:2; *see United States v. Gracia*, 983 F.2d 625, 627–28 (5th Cir. 1993) ("When considering challenges to guilty plea proceedings, we have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."). Movant also affirmed that he understood the Government could recommend, and the Court could impose, any sentence up to the maximum, and he could not take back his guilty plea if he did not like the Government's recommendation or the sentence imposed by the Court. Rearraign. Tr. at 24:20–25:10. Seventh, withdrawal would have wasted judicial resources, given the Government's overwhelming evidence and Movant's lack of a defense. *See* Klein Aff. at 4 (describing how Movant was unable to provide receipts or the name of the restaurant where he purchased the bag of "tacos" he was seen giving to his codefendant).

Because Movant could not have shown "a fair and just reason" to withdraw his guilty plea, Counsel was not ineffective for failing to file a meritless motion to withdraw

the plea. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 965–66 (5th Cir. 1994). This claim is denied.

### C.  Failure to Challenge Drug Amount

In Ground Three, Movant argues that Counsel was ineffective because he failed to request that the Court make a finding regarding the scope of Movant's jointly undertaken criminal activity. Citing *United States v. Mitchell*, 964 F.2d 454 (5th Cir. 1992), Movant states that "[t]here is a big difference between 1 kilogram, 5 kilograms, and 17 kilograms of cocaine," and claims that, had Counsel challenged the drug amount, there is a reasonable probability the Court would have held Movant responsible for one kilogram of cocaine instead of 17.

"For purposes of the Guidelines or for determining statutory minimum and maximum sentences, our cases always have limited the defendant's liability to the quantity of drugs with which he was directly involved or that was reasonably foreseeable to him." *Haines*, 803 F.3d at 740. "It is well established that district courts must consider the extent to which a larger drug enterprise is reasonably foreseeable to defendants involved in small or isolated transactions." *Mitchell*, 964 F.2d at 458.

Unlike the defendant in *Mitchell*, Movant did not call his supplier and ask to buy "a couple of ounces" of cocaine from a larger shipment the supplier had recently received, where the quantity of the shipment and identities of other codefendants/purchasers were unknown to him. *See Mitchell*, 964 F.2d at 459 (district court's finding that it was reasonably foreseeable to defendant that conspiracy involved 20 kilograms of cocaine was clear error, even though defendant admitted seeking to purchase more than 500 grams and

12

introduced supplier to other customers, where there was no indication of regularity of defendant's purchases, amounts purchased, length of time associated with suppliers, or that defendant was aware of other members of conspiracy or extent of their purchases). Instead, as described in the PSR, Movant and his codefendants "all knowingly and intentionally" pooled their money in order to purchase 17 kilograms of cocaine at a bulk rate in a single transaction. PSR ¶ 9. Movant delivered a bag of cash to Reyna, then waited in a nearby hotel room while Hernandez completed the purchase. *Id.* ¶¶ 7–8. Movant testified that he had read and discussed the PSR with Counsel, and Counsel stated there were no objections from the defense. 4/15/2021 Sent. Tr., D.E. 174 at 3:19–4:1. The Court accepted the PSR as its findings of fact, which it may do "'without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.'" *United States v. Piper*, 912 F.3d 847, 859 (5th Cir. 2019) (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012)). Because Movant was directly involved with and aware of the 17 kilograms of cocaine involved in the transaction, he was correctly held accountable for 17 kilograms of cocaine at sentencing. *See Haines*, 803 F.3d at 741.

Moreover, Movant admitted in his Stipulation of Fact that he "made or received phone communications and conspired and agreed with codefendant(s) or others, directly or indirectly, with the intent to possess and distribute more than 5 kilograms of a mixture or substance containing a detectable amount of cocaine in the Corpus Christi, Texas area. [Movant] provided U.S. currency to co-conspirator(s) at a local restaurant or hotel, as part of their agreement or intent to provide U.S. currency in exchange for cocaine." D.E. 97, p.

2. At rearraignment, he confirmed this was "what happened in [his] case" and was "true and correct." Rearraign. Tr. at 26:6-13. Because Movant admitted his attributable drug amount was at least five kilograms of cocaine, it is unreasonable to suggest the Court would have nonetheless found him responsible for only one kilogram had Counsel challenged the drug quantity at sentencing.[1]

Because the objection would have been overruled, Counsel was not ineffective for failing to file a meritless objection to the drug quantity at sentencing. *See United States v. Kimler*, 167 F.3d 889, 892(5th Cir. 1999); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). This claim is denied.

### 4. Failure to File Appeal

In Ground Four, Movant claims that Counsel failed to file an appeal as instructed. Movant's original § 2255 motion states, "After sentencing and before leaving the courthouse, [Movant] verbally instructed Attorney Klein to file an appeal." D.E. 292, p. 8. His Memorandum in Support states that he "spoke by telephone with Attorney Klein prior to the sentencing hearing. Rivera instructed Attorney Klein to appeal decision denying acceptance of responsibility. After sentencing, Rivera again instructed Attorney Klein to file an appeal." D.E. 293, pp. 7–8. Movant's reply states that "he spoke by telephone with Attorney Klein prior to the sentencing hearing. Rivera instructed Attorney Klein to appeal any decision that he was responsible for 17 kilos of cocaine and any decision denying

---

1.  Codefendant Vela was similarly held accountable for 17 kilograms of cocaine, despite defense counsel's argument that, "even though co-defendant Hernandez was attempting to buy 17 kilos of cocaine, the amount Vela was purchasing from her was significantly smaller." D.E. 136.

acceptance of responsibility." D.E. 362, p. 6. Finally, Movant's appointed § 2255 counsel filed a Clarification Regarding Pleadings Filed by Defendant-Movant, explaining that Movant could not have spoken to Counsel in person following sentencing because the hearing was held via Zoom and that Counsel never made any contact with Movant at any point after the sentencing hearing. D.E. 383, p. 2.

The law is clear that, if a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance, entitling the defendant to an out-of-time appeal. *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000). As the Fifth Circuit held in *Tapp*, if a defendant "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and [he] will be entitled to an out-of-time appeal, regardless of whether he is able to identify any arguable meritorious grounds for appeal . . . ." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). In cases where the defendant fails to instruct counsel to file a notice of appeal, the court must determine "whether counsel in fact consulted with the defendant about an appeal." *Flores–Ortega*, 528 U.S. at 478. To "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* The Supreme Court has held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. "Only by considering all relevant factors in a given case can a court properly determine whether a

15

rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.* "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

The Court held an evidentiary hearing on Movant's failure-to-appeal claim, during which Movant and Counsel testified under oath. Minute Entry Feb. 7, 2023, ERO at 10:28 A.M.–11:48 A.M.

On direct examination, Movant testified that he told Counsel three times before sentencing that he wanted to appeal his case. The first time was when he rejected the plea agreement. Movant testified, "That's the whole reason why I pled guilty, because I didn't want to waive my appellate rights," and he made it clear to Counsel that he did not sign the plea agreement because he wanted to keep his appellate rights. ERO at 10:37 A.M. On one occasion, he told Counsel to appeal "no matter what," and a couple more times he said, "We're going to appeal." ERO at 10:45 A.M. He acknowledged the Court's admonishment regarding his appellate rights at sentencing, but he "didn't really pay too much attention to that because I thought it was already taken care of on the other end." ERO at 10:50 A.M. Movant stated that Counsel never attempted to contact or visit him after sentencing. He only discovered that Counsel didn't file an appeal roughly a year later, when a jailhouse lawyer told him that he should have heard something about his appeal by then. On the advice of this jailhouse lawyer, Movant called a paralegal to assist with filing a § 2255 motion. The paralegal asked Movant if he told Counsel to appeal, and Movant relayed the

background of his case; however, Movant was not able to review the motion before it was filed because the prison was on lockdown due to COVID-19. Movant's wife—who has had power of attorney over Movant's affairs since before this case—signed and filed the § 2255 motion on his behalf.

On cross-examination, Movant stated that he told Counsel he wanted to appeal at least three times, but he could not remember the exact times or whether it was before or after the Amended PSR was submitted. He did not contact Counsel after sentencing because he was waiting for Counsel to call him. Movant's wife was in contact with Counsel immediately after sentencing regarding the final payment for his services. Movant was in contact with his wife during the same time frame, but he did not ask his wife to discuss his appeal with Counsel because "she already had other stuff going and I didn't even to think to ask her." ERO at 10:58.

Counsel—who is now District Judge of the 148th District Court of Nueces County, Texas—testified that he was licensed in 1998 and has handled thousands of criminal cases, including more than 1,000 federal drug cases. It is his standard practice to confer with clients about their right to appeal and to file an appeal if a client instructs him to do so. Movant did not sign the plea agreement because he was only charged with one count and wasn't going to cooperate, and he did not want to have a plea agreement on his docket sheet in prison. The fact that Movant wanted to preserve his appellate rights was not a factor in rejecting the plea agreement, and Movant never said he wanted to appeal, either before or after sentencing. He never said to appeal the drug quantity, the addition of the heroin as relevant conduct, or the loss of acceptance of responsibility, or to appeal "no

17

matter what." ERO at 11:10 A.M. Had Movant stated that he wanted to appeal, Counsel would have informed him that there would be an additional fee for an appeal. If Movant wanted another attorney, Counsel would have filed a notice of appeal and a motion to withdraw.

Counsel further testified that Movant's wife contacted him within one to three days after sentencing and requested a copy of the judgment and statement of reasons, which Counsel provided. She also requested a copy of the sentencing transcript, and he immediately prepared and filed a transcript request form. *See* D.E. 157 (filed five days after sentencing). Counsel asked Movant's wife if she wanted the transcript for an appeal; she responded "no" and explained that Movant wanted the transcript to take to BOP to prove that he did not cooperate with the Government. Neither Movant, nor his wife, nor any other family member, ever told Counsel that Movant wanted to appeal.

On cross-examination, Counsel acknowledged that a client may have more than one reason for not signing a plea agreement. He stated that Movant authorized him to negotiate with the Government concerning the new heroin charge. Movant was not "happy" about losing credit for acceptance of responsibility and having the heroin included as relevant conduct in this case, but he was "accepting of it." ERO at 11:22 A.M. He was concerned about being indicted in a separate heroin conspiracy case and having a second sentence stacked on top of what he would receive in this case.

Counsel testified that he informed Movant of his appellate rights prior to sentencing and told him that he could appeal his sentence if he was unhappy, but Movant would have to let him know. He did not repeat his explanation of appellate rights after sentencing or

attempt to visit or call Movant. Counsel knew that Movant was being held at the Coastal Bend Detention Center and that it could be difficult for Movant to contact him; however, it was obvious that Movant was in touch with his wife after she contacted Counsel several times immediately after sentencing with specific requests from Movant. Her request for a sentencing transcript did not raise a red flag that he should call Movant regarding an appeal because she assured him that Movant did not want to appeal.

At the close of the hearing, counsel for Movant and the Government addressed the Court. Movant's appointed § 2255 attorney argued that Movant told Counsel he wanted to preserve his appellate rights and repeatedly stated that he wanted to appeal. He also made it known several times that he was he was unhappy with things in his PSR—including denial of acceptance of responsibility, the heroin being included, and the amount of cocaine attributed to him—which should have placed Counsel on notice that Movant had issues he may want to appeal and triggered Counsel's duty to consult with him regarding his appellate rights. The Government responded that because Counsel and Movant both testified that Counsel consulted with Movant about his appellate rights before sentencing, the only issue is whether Movant instructed Counsel to appeal. The Court must therefore make a credibility determination between Counsel—a respected judge and officer of the court with 25 years' experience and a standard practice of consulting with clients about their appellate rights and filing an appeal when instructed to do so—and Movant, a convicted felon who has offered several conflicting statements during various pleadings in this proceeding, but has offered no evidence beyond his own self-serving testimony that he told Counsel to appeal.

Having considered the testimony and demeanor of both witnesses, the parties' arguments, and the inconsistencies in Movant's pleadings regarding when, where, and what issues he allegedly told Counsel to appeal, the Court finds that Counsel was credible, while Movant was not. The Court further finds that Counsel asked Movant's wife—who has power of attorney over his affairs—if he wanted to appeal, and she explicitly told Counsel that he did not want to appeal. Counsel was therefore not ineffective for failing to file an appeal on Movant's behalf. This claim is denied.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the

movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of his claims.

## VI. CONCLUSION

For the foregoing reasons, Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 292) is **DENIED**, and Movant is **DENIED** a Certificate of Appealability.

**ORDERED** ___March 29, 2023_____.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE